IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EMMETT JOSHUA MORPHIS, ) | |
| ) | |
| Plaintiff, ) | No. 3:12-cv-00989 |
| ) | |
| v. ) | Judge Nixon |
| ) | Magistrate Judge Griffin |
| CITY OF DICKSON, TENNESSEE, and ) | |
| SETH GOODWIN, individually and in his ) | |
| official capacity, ) | JURY DEMAND |
| ) | |
| Defendants. ) | |

ORDER

Plaintiff Emmett Joshua Morphis brought this action against Defendants City of Dickson, Tennessee ("the City") and Dickson Police Officer Seth Goodwin, in his individual and official capacity, alleging violations of the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) Morphis also alleges state law claims of negligence, assault, battery, and intentional infliction of emotional distress. (Id.) Pending before the Court is Defendants' Motion for Summary Judgment ("Motion"). (Doc. No. 34.) For the reasons set forth herein, Defendants' Motion is **GRANTED in part** and **DENIED in part**.

I. BACKGROUND

A. Factual Background[1]

On November 6, 2011, Plaintiff Emmett Joshua Morphis suffered a seizure that rendered him unconscious while he was driving southbound on Highway 46 in Dickson, Tennessee. (Doc.

---

[1] Unless otherwise indicated, the facts in this section are taken from Plaintiff's Response to Defendants' Statement of Undisputed Material Facts (Doc. No. 67) and Defendants' Response to Plaintiff's Statement of Additional Disputed Material Facts (Doc. No. 74). Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. *Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986).

1

No. 61 at 9–10.) Morphis's vehicle swerved left and struck another vehicle. Tennessee Highway Patrol Trooper Jason Clark witnessed Morphis's gray truck crash into the other vehicle, turned on his blue lights, and followed the truck. Morphis's vehicle continued across Highway 46 into a parking lot before proceeding up a hill, into a ditch, and then into a wooded area before finally coming to a halt in a second ditch. Clark assumed Morphis had been fleeing the scene of the accident and called for backup.

Five officers responded to Clark's call for backup: Seth Goodwin, Rob Peeler, William Goodman, Mason Albright, and Matthew Dunn. When they arrived, Morphis was still inside the vehicle. The officers observed Morphis moving around in his seat and loudly ordered him to put his hands up ("Get your hands up!"; "I will shoot you right now if you do not put your hands up.") and to exit the vehicle ("Get out of the fucking car!"; "Get out of the car, or I will tase you again."). Peeler then climbed into the bed of the truck and shattered the rear window so that he could get a better view of Morphis. (Doc. No. 40 at 45.) The video footage of the scene shows Morphis moving around inside the truck. (Doc. No. 48.) Goodwin described Morphis as "not being combative," but that "[h]e was just not doing what we told him." (Doc. No. 39 at 124.) Peeler recalled Morphis "going from the passenger seat to the driver seat on his hands and knees." (Doc. No. 40 at 33.)

Eventually, Goodwin tased Morphis in the back, beginning a period of two minutes and twenty-three seconds during which Goodwin tased Morphis a total of eleven times. Goodwin testified during his deposition that he decided to deploy his taser "[t]o keep [Morphis] from moving and digging throughout the car so we could try and get a door to open to get in and get compliance over him." (Doc. No. 39 at 116.) During the tasing episode, Morphis occasionally put his hands up and repeatedly pleaded with the officers to leave him alone. (Doc. No. 40 at

2

47.) Defendants contend that the taser never made "good probe contact" with Morphis and was therefore ineffective (Doc. No. 35 at 8), but their position is contradicted by Peeler, who testified that, "It seem [sic] like when the probes hit him, it did get his attention and he put his hands up. And once the cycle went through he went back to being combative and resisting and trying to grab for something." (Doc. No. 40 at 46.)

The incident ended when Morphis fell out of the truck into the ditch, dislocating his elbow in the process. Though he has very little memory of the encounter, Morphis alleges that the officers tased him when he attempted to exit the vehicle, which prohibited him from breaking his fall. The officers then handcuffed Morphis; he was held for some period of time before the ambulance arrived to transport him to the hospital. He later underwent emergency surgery for injuries he sustained from both the car accident and subsequent encounter with the officers.

**B. Procedural Background**

Morphis filed the instant action in this Court on September 26, 2012. (Doc. No. 1.) The City and Goodwin moved for summary judgment on February 17, 2014 (Doc. No. 34), and filed a Memorandum in Support (Doc. No. 35) and a Statement of Undisputed Material Facts (Doc. No. 36). Morphis filed his Response on March 31, 2014 (Doc. No. 69) with a Statement of Additional Disputed Material Facts (Doc. No. 68) and a Memorandum in Support (Doc. No. 71). Defendants filed a Reply on April 11, 2014 (Doc. No. 75), along with a Response to Morphis's Statement of Additional Disputed Material Facts (Doc. No. 74).

## II. STANDARD OF REVIEW

Summary judgment is rendered when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must demonstrate that the non-moving party has failed to establish a necessary

element of that party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment will be granted if "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996). The movant has the initial burden of informing the district court of the basis for the summary judgment motion and identifying portions of the record that lack a genuine issue of material fact. *See Celotex*, 477 U.S. at 323.

The non-moving party may not rest solely on the allegations in the complaint, but must delineate specific evidence that shows there is a genuine issue for trial. *See id.* at 324. A "mere possibility" of a factual dispute is not sufficient to withstand a properly supported motion for summary judgment. *Baird v. NHP Mill Creek Apartments*, 94 F. App'x 328, 330–31 (6th Cir. 2004) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). A dispute about a material fact is genuine if a reasonable factfinder could find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A party asserting or denying that a fact is genuinely disputed may support its position by (1) citing to particular parts of materials in the record, (2) showing that the materials cited by the opposing party do not establish the absence or presence of a genuine dispute, or (3) showing that an adverse party cannot produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1).

All reasonable inferences are to be drawn in favor of the non-moving party and the evidence of the non-movant is to be believed. *Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment." *Id.* If the court determines that a reasonable factfinder could not find for the non-moving party, summary judgment must be granted. *See Lexington-South Elkhorn Water Dist.*, 93 F.3d at 233. Courts

must therefore tread cautiously before granting motions for summary judgment, lest judges unduly eliminate the "advantages of trial before a live jury with live witnesses, and all the possibilities of considering the human factors . . . by substituting trial by affidavit and the sterile bareness of summary judgment." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 176 (1970) (Black, J., concurring).

### III. QUALIFIED IMMUNITY ANALYSIS

Morphis alleges that Goodwin—in both his official capacity and his individual capacity—and the City violated his Fourth Amendment rights. The court will analyze each claim in turn.

**A. Claim Against Goodwin in Official Capacity**

Morphis sued Goodwin in his official capacity with the Dickson Police Department. A suit against an individual in his official capacity is the equivalent of a suit against the government entity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Therefore, the Court will decide that issue by determining the City's liability. *See Barber v. City of Salem*, 953 F.2d 232, 237 (6th Cir. 1992).

**B. Claim Against Goodwin as an Individual**

"Every person who, under color of . . . [state law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983 (2012). At the summary judgment stage, the case must go to a jury if the court finds that "first, there are genuine issues of material fact as to whether [the Officers] violated [the plaintiff's] Fourth Amendment rights in an objectively unreasonable way and, second, those rights were clearly established at the time of [the plaintiff's] arrest such that a reasonable officer would have known

5

that his conduct violated them." *St. John v. Hickey*, 411 F.3d 762, 768 (6th Cir. 2005). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Lower courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Id.* at 236.

1. Constitutional Violation

This Court will start with whether Goodwin violated the Fourth Amendment in an objectively unreasonable way. This inquiry assesses "reasonableness at the moment" of the use of force, as "judged from the perspective of a reasonable office on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Courts use three factors to guide this analysis: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Shreve v. Jessamine Cnty. Fiscal Court*, 453 F.3d 681, 687 (6th Cir. 2006) (quoting *Graham*, 490 U.S. at 396). The ultimate inquiry is "whether the totality of the circumstances justifies a particular sort of seizure." *St. John v. Hickey*, 411 F.3d 762, 771 (6th Cir. 2005) (quoting *Graham*, 490 U.S. at 396).

First, the seriousness of the offense weighs in favor of Morphis. Though evading arrest after an automobile accident is a serious offense, it "does not present a risk of danger to the arresting officer that is presented when an officer confronts a suspect engaged in an offense like robbery or assault." *Parker v. Gerrish*, 547 F.3d 1, 9 (1st Cir. 2008) (finding that driving while intoxicated did not constitute a serious offense for the purposes of the first *Graham* factor).

Indeed, Defendants admit that Morphis's actions "may not be the *most serious* criminal violations" (Doc. No. 35 at 15) and analogize the case to *Williams v. Sandel*, 433 Fed. App'x 353 (6th Cir. 2011), where the plaintiff's underlying crime was running around naked.

As to the second *Graham* factor, a reasonable jury could conclude that Morphis did not pose an immediate threat to the safety of the officers. Defendants contend that the officers were in fear and cite Clark's testimony that he was "just in fear at—in the beginning when he failed to yield to the blue lights and then crossed two ditches. And my fear was the fact that there may have been multiple subjects in the truck or weapons." (Doc. No. 43 at 27.) However, Clark later goes on to testify that his fears subsided when he "knew it was only one subject" and that once the truck came to a halt, Morphis did nothing—be it raising his hand, displaying a weapon, or even pointing his finger—to make Clark fearful of his life. (*Id.* at 28.) Moreover, the video footage of the incident is inconclusive: Although the video shows Morphis moving around the truck, a jury could reasonably conclude that he was behaving like someone who was confused after suffering from a seizure, not like someone planning to find a weapon and fire it at the officers. Instead, he pleads for the officers to stop yelling. Throughout the standoff, Morphis never used force, never threatened to do so, and was surrounded by six officers, all with their weapons drawn. Moreover, his truck was immobilized, and there was no danger that he would flee the scene. The circumstances of the encounter could convince a reasonable jury that Morphis posed no immediate threat to the officers. *See Wakefield v. City of Escondido*, 2007 WL 2141457, at *1 (9th Cir. 2007) (affirming a jury verdict against defendant police officers where plaintiff was "the victim of a rear-end collision" and was "unarmed, outnumbered, at least partially restrained, visibly suffering from claustrophobia, and pleading with [the officer] not to shoot him.").

7

Finally, a reasonable jury could find that Morphis was not actively resisting or attempting to flee.[2] The constitutional analysis turns on whether Morphis's refusal to exit the vehicle constitutes active or passive resistance. Defendants posit that Morphis "actively resisted officers' efforts to gain control over him once his truck was nose down in the ditch." (Doc. No. 35 at 16.) Defendants analogize the case to *Hagans v. Franklin Cnty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012), where the court concluded that the plaintiff actively resisted arrest. In *Hagans*, however, the plaintiff "resisted arrest by laying down on the pavement and deliberately locking his arms tightly under his body while kicking and screaming as to avoid arrest." *Eldridge v. City of Warren*, 533 F. App'x 529, 534 (6th Cir. 2013) (distinguishing *Hagans* on similar grounds). In the instant case, Morphis squirmed around inside the truck with a pained expression on his face, as if trying to comprehend his surroundings amidst a barrage of shouting.

Indeed, *Eldridge* is perhaps the best case for comparison. There, the plaintiff—who appeared drunk but was actually in the midst of a disorienting diabetes-related episode—repeatedly refused officers' orders to exit his vehicle. *Id.* at 530–31. The court concluded that Eldridge's repeated refusal to comply constituted only passive resistance that was insufficient to justify the officers' use of a taser. *Id.* at 534–35 ("If there is a common thread to be found in our caselaw on this issue, it is that noncompliance alone does not indicate active resistance; there must be something more."). The "something more" element can be satisfied by a "verbal showing of hostility," a deliberate act of defiance using one's body," or the "stationary acceleration of [a] vehicle," none of which Morphis demonstrated here. *Id.* Goodwin's own account of the encounter perfectly sums up the passive resistance demonstrated in *Eldridge*: "He

---

[2] According to Defendants, Morphis "attempted to flee from officers on foot, although he did not get far before Officer William Goodman apprehended him." (Doc. No. 35 at 17.) However, since this alleged attempt to flee occurred after Morphis was tased, it is not relevant to the analysis.

8

appeared to be—I mean, to me he appeared to be noncompliant. He was just not doing what we told him . . . he was not being combative." (Doc. No. 39 at 124.)

The "careful balancing of the nature and quality of the intrusion of the individual's Fourth Amendment interests against the countervailing governmental interests at stake" called for in *Graham* indicates that a jury could reasonably find that Officer Goodwin violated Morphis's Fourth Amendment right to be free from excessive force. Morphis's crime was not serious, he was not actively resisting arrest, and an issue of material fact exists as to whether he posed an immediate threat to the officers' safety.

2. Clearly Established Law

Once a court finds a constitutional violation, it must next consider whether "the right was clearly established at the time of the alleged violation." *Campbell v. City of Springboro*, 700 F.3d 779, 786 (6th Cir. 2012). A right is clearly established if "[t]he contours of that right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wheeler v. City of Lansing*, 660 F.3d 931, 938 (6th Cir. 2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Here, the officers should have known that "the gratuitous or excessive use of a taser would violate a clearly established constitutional right." *Landis v. Baker*, 297 F. App'x 453, 463 (6th Cir. 2008) (citing *Hickey v. Reeder*, 12 F.3d 754, 757 (8th Cir. 1993)). Defendants, once again citing *Hagans*, frame the inquiry as "whether it was clearly established [in November 2011] that using a taser repeatedly on a suspect actively resisting arrest and refusing to be handcuffed amounted to excessive force." (Doc. No. 35 at 20.) As discussed above, however, Morphis's movements in the truck—devoid any verbal displays of hostility or deliberate acts of defiance—do not constitute active resistance. *See Wysong v. City of Heath*, 260 Fed. App'x 848,

9

856 (6th Cir. 2008) ("[T]he right to be free from physical force when one is not resisting the police is a clearly established right.").

Because Morphis had a clearly established right not to be tasered when he was at most offering passive resistance to an officer, the Court **DENIES** Defendants' motion for summary judgment with respect to Morphis's excessive force claim against Goodwin.

## C. Claim Against City of Dickson

Morphis also pleads a claim for municipal liability against the City under § 1983. (Doc. No. 1.) To prevail, he must show that his constitutional rights were violated and that a policy or custom of the City was the "moving force" behind the deprivation of rights. *Miller v. Sanilac County*, 606 F.3d 240, 255 (6th Cir. 2010) (internal citation omitted).

### 1. Failure to Train

Morphis first argues that the City inadequately trained its officers on how to deal with parties who have been injured, specifically in automobile accidents. (Doc. No. 71 at 13–14.) *See Gregory v. City of Louisville*, 444 F.3d 725, 753 (6th Cir. 2006) ("[A] systematic failure to train police officers adequately [is] a custom or policy which can lead to municipal liability."). The City is liable under § 1983 for failure to train if the Plaintiff can prove three elements: (1) "that a training program is inadequate to the tasks that the officers must perform"; (2) "that the inadequacy is the result of the [City]'s deliberate indifference"; and (3) "that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

The first and third prong both favor Morphis. In his deposition, Dickson's Chief of Police Ricky Chandler admits that, in November of 2011, the police department did not train officers on how to handle an interaction with a possibly injured individual. (Doc. No. 66 at 76–

77.) Chandler also testified that the department had no policy on how to remove injured parties from vehicles. (*Id.* at 100.) A jury could therefore reasonably conclude that Dickson's training program on this common occurrence was inadequate in 2011. Moreover, this lack of training is directly related to Morphis's injury: If the officers realized that he had suffered a seizure, they likely would not have tased him eleven times.

For the second prong, deliberate indifference can be demonstrated "through evidence of a single violation of federal rights, accompanied by a showing that the [municipality] had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation. " *Harvey v. Campbell County, Tenn.*, 453 Fed. App'x 557, 562–63 (6th Cir. 2011) (citations omitted). The Defendants themselves provided such evidence by citing to a previous lawsuit against both the City of Dickson and Seth Goodwin. (Doc. No. 35 at 24.) *Harrison v. City of Dickson*, No. 3:11-CV-01044, 2013 WL 1482950, at *11 (M.D. Tenn. Apr. 11, 2013). The facts in that lawsuit are eerily similar to the ones in the instant matter: The Plaintiff was involved in a car accident on Highway 46 in Dickson, Tennessee on November 1, 2010, almost exactly a year before Morphis's crash. *Id.* at *1. Plaintiff Harrison was driving a motorcycle when a white vehicle collided with him, causing severe injuries to his left leg and right hand. *Id.* A bystander gathered some of Harrison's personal effects that were strewn in the highway— including a pocket knife—and handed those items to Harrison while he lay motionless. *Id.* Defendant Goodwin—who had arrived on the scene—asked Harrison to give up the closed pocketknife, and Harrison refused. Eventually, Goodwin punched Harrison in the face with enough force to knock over the EMT who was kneeling down behind Harrison to secure his spinal cord; Goodwin then seized the pocket knife. *Id.* Harrison sued Goodwin and the City for violating his constitutional rights and the parties settled on November 6, 2013. In an April 11,

11

2013 order, this Court denied Defendants' motion for summary judgment in part, holding that "Harrison has shown enough evidence for a reasonable jury to conclude that Goodwin acted unreasonably in dealing with an injured and non-threatening motorcycle accident victim." *Id.* at *7.

Defendants argue that the Harrison situation is distinguishable because Morphis "was not a motor vehicle accident victim," "no taser was used in the *Harrison* matter," and Morphis "was evading officers and actively resisting apprehension." (Doc. No. 35 at 25.) The Court disagrees. A reasonable jury could conclude that the nature of the accident and the type of force used are merely superficial differences and are swamped by the similarities: In both cases, Officer Goodwin failed to show the requisite level of sensitivity toward someone recovering from a traumatic episode. *See Crawford v. City of S. Bend*, No. 3:04-CV-0173AS, 2006 WL 842389, at *2 (N.D. Ind. Mar. 28, 2006) ("[I]n this constitutional tort case it can also be said that the police office takes his-her victims as he finds them."). Even after this Court found "sufficient evidence to raise a dispute as to whether Dickson was deliberately indifferent to its failure to train" because constitutional violations were foreseeable consequences of Dickson's "lack of instruction on how to deal with injured suspects at accident scenes," Dickson failed to institute any new training policy. *Harrison*, 2013 WL 1482950 at *12. The prior episode evinces a genuine issue of material fact as to whether Goodwin's lack of subsequent training resulted from the City's deliberate indifference. Accordingly, the Court **DENIES** Defendants' motion for summary judgment with respect to Morphis's failure to train claim.

2. Failure to Investigate

Second, Morphis contends that the City failed to properly investigate the incident. To satisfy this claim, Morphis

> must show not only that the investigation was inadequate, but that the flaws in this particular investigation were representative of (1) a clear and persistent pattern of illegal activity, (2) which the Department knew about or should have known about, (3) yet remained deliberately indifferent about, and (4) that the Department's custom was the cause of the violation here.

*Thomas v. City of Chattanooga*, 398 F.3d 426, 433 (6th Cir. 2005.) Morphis's proffered evidence—that Chandler "stated that he was unaware of the exact number of times that Mr. Morphis was tased, thinking that he had been tased two to three times" (Doc. No. 71 at 14) does not come close to meeting this high standard. No reasonable jury could conclude that the City inadequately investigated the incident and Morphis's failure to investigate claim is hereby **DISMISSED**.

## IV. STATE LAW CLAIMS

Lastly, Morphis alleges Tennessee state law claims of negligence, assault and battery, outrageous conduct, and intentional infliction of emotional distress against both the City of Dickson and Officer Goodwin. (Doc. No. 1.)

### A. Claims Against City of Dickson

Governmental entities are not immune from suit "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment." Tenn. Code. Ann. § 29-20-205 (2002). However, an exception to the Tennessee Governmental Tort Liability Act ("TGLTA") applies when the plaintiff's injury arises out of a civil rights violation. *Id* § 29-20-205(2). Moreover, if an otherwise valid claim under TGTLA "arises out of the same circumstances giving rise to her civil rights claim under § 1983," then the state claim falls under the civil rights exception and the city is immune. *See Johnson v. City of Memphis*, 617 F.3d 864, 871 (6th Cir. 2010); *Campbell v. Anderson Cnty.*, 695 F. Supp. 2d 764, 778 (E.D. Tenn. 2010).

The Court finds that the TGTLA has not waived the City's immunity against any of Morphis's state law claims. All of Morphis's claims against the City arose out of the same circumstances of his § 1983 claims: Goodwin's actions on November 6, 2011, or on Dickson's training and supervision of its officers. As a result, the Court finds Dickson immune from suit on all of Morphis's state law claims and these claims are **DISMISSED**.

**B. Claims Against Goodwin**

Defendants also move for summary judgment on Morphis's individual claims against Goodwin. (Doc. No. 35 at 29–31.)

First, as to Morphis's assault and battery claim, Defendants argue only that Morphis is collaterally estopped from asserting the claim because he has failed to establish his excessive force claim under § 1983. *Id.* However, as discussed above, the Court finds Morphis has established a valid Fourth Amendment claim under § 1983. *See Griffin v. Hardrick*, 604 F.3d 949, 956–57 (6th Cir. 2010) (holding that a state law claim for battery arising out of the same use of force as an "excessive use of force" claim under § 1983 are analyzed identically). Thus, Defendants' motion for summary judgment is **DENIED** as to Morphis's assault and battery claim against Goodwin.

Second, as to Morphis's negligence claim, Defendants contend that Goodwin "acted reasonably under the facts and circumstances of the case from the perspective of a reasonable officer at the scene" and that "Officer Goodwin did not breach any duty owed to Plaintiff." (Doc. No. 35 at 29.) In Tennessee, the elements of negligence are: "(1) a duty of care owed by defendant to plaintiff; (2) conduct falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *McClung v. Delta Square Ltd. P'shp.*, 937 S.W.2d 891, 894 (Tenn. 1996) (internal citations

14

omitted). Police officers have a duty to protect the public from harm. *Haynes v. Hamilton Cnty.*, 883 S.W.2d 606, 611 (Tenn. 1994). An officer breaches that duty if his conduct proximately causes an injury, meaning that it must have been a "substantial factor" in bringing about the harm. *Id.* at 612. Here, Goodwin tased Morphis eleven times, the last of which caused Morphis to fall and break his elbow. Moreover, as discussed above, Morphis has produced sufficient evidence to create a genuine issue of material fact as to whether Goodwin's actions were objectively unreasonable under the circumstances. Accordingly, Defendants' motion for summary judgment is **DENIED** as to Morphis's negligence claim.

Finally, as to Morphis's outrageous conduct and intentional infliction of emotional distress claims, Defendants argue that Morphis cannot show a prima facie case. (Doc. No. 35 at 30–31.) Under Tennessee law, "[i]ntentional infliction of emotional distress and outrageous conduct are different names for the same cause of action." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204–05 (Tenn. 2012) (intentional citation omitted). To prevail on a claim of intentional infliction of emotional distress, a plaintiff must show "defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civil society, and (3) resulted in serious mental injury to the plaintiff." *Id.* at 205.

Here, the Court finds that summary judgment is inappropriate. The Court notes that Defendants have not met their burden at summary judgment to show that no dispute of material fact exists. Instead, Defendants merely state the standard and offer a conclusory statement that Morphis has failed to show the requisite level of outrageousness. (Doc. No. 35 at 30–31.) Moreover, the Court finds that Morphis has produced sufficient evidence for a reasonable jury to find Goodwin's conduct outrageous. A reasonable jury could find it beyond the bounds of decency for an officer to tase an unarmed person eleven times over the course of two minutes.

*See Alexander v. Newman*, 345 F. Supp. 2d 876, 888 (W.D. Tenn. 2004) ("Unprovoked beatings by officials who are hired to protect and serve the community could certainly be deemed intolerable in a civilized community."). Thus, the Court **DENIES** summary judgment as to Morphis's intentional infliction of emotional distress claim.

V. CONCLUSION

For the above-stated reasons, the Court **GRANTS** the Motion for Summary Judgment (Doc. No. 34) as to Morphis's (1) federal and state law claims against Goodwin in his official capacity; (2) § 1983 claim against Dickson based on its failure to discipline officers; and (3) state law claims against Dickson. The Court **DENIES** the Motion as to Morphis's (1) federal and state law claims against Goodwin in his individual capacity and (2) § 1983 claim against Dickson based on its failure to train officers.

It is so ORDERED.

Entered this 20th day of April, 2015.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT